CASE NO. 1
MANDAMUS—ORIGINAL JURISDICTION

IRVING FRANKEL, ANNE C. FRANKEL, SAMUEL FRANKEL, and ROSE FRANKEL, a copartnership trading and doing business as NORMANDIE HOTEL, 349 Ocean Drive, Miami Beach, Florida, v. VIOLET B. SPAINHOUR, a widow.

CASE NO. 2
VIOLET B. SPAINHOUR v. MARSHALL C. WISEHEART, as Judge of the Circuit Court of Dade County, Florida.

31 So. (2nd) 535                                         June Term, 1947
August 1, 1947                                               Division A

W. F. Parker and Blackwell, Walker & Gray, for petitioner.

W. G. Ward, Julius F. Parker, John T. Wiggington, Leo L. Foster and T. T. Turnbull, for respondent.

CHAPMAN, J.:

This is a case of original jurisdiction in mandamus. The petition of Violet B. Spainhour represents unto this Court that Honorable Charles A. Carroll, as Judge of the Circuit Court of Dade County, Florida, on November 23, 1946, made and entered a final decree in the case identified supra as No. 1 in which a lease between Violet B. Spainhour as lessor and Park Corporation as lessee, dated November 27, 1936, was construed and interpreted. The several individuals named in

Case No. 1 are officers and stockholders of Park Corporation. The lease, by mutual consent, was later amended or modified on two occasions: (a) on December 7, 1937, and (b) on January 31, 1939.

The lease was for twenty-five years after 1936. The 1937 amendment gave the lessees an option to buy the property for the sum of $25,000.00 to be exercised at any date between 1946 and 1961. Likewise the option terminated upon ten days' notice of default in payments of rents or if the main lease terminated. The lessees defaulted in payment of quarterly rents which matured September 15, 1945.

Pertinent portions of the lease are viz:

"IT IS AGREED by and between the parties hereto that should this rent, at any time, remain unpaid for thirty days after the same shall become due and payable, the said lessor may, at her option, then consider said Lessee a tenant at sufferance and re-enter upon and repossess herself of the said premises, and should the said lessee at any time permit the said rent to be in arrears and unpaid for thirty days after the same shall have become due and payable, then the said lessee covenants and agrees that in case of such default the entire rent for the term which said premises are leased shall at once become due and payable and may be recovered forthwith by distress or otherwise.

"1. THE LESSEE hereby covenants and agrees to put into the premises in question permanent improvements amounting to at least Fifteen Thousand Dollars in cost, which improvements shall become part and parcel of the premises in question and shall, at the end of the term demised, become the property of the lessor.

"2. The lessee covenants that these improvements will be made to the premises within five years from the date of these presents, and that any building or construction it will cause to be performed will be done in accordance with the building code of the City of Miami Beach." . . .

"11. If any of the above covenants and agreements are broken by the lessee, then this lease shall be terminated at the pleasure of the lessor and all monies at that time paid shall be

kept by the lessor as liquidated damages, whether earned as rent or otherwise."

Material excerpts from the opinion and decree of the lower court construing and interpreting the aforesaid lease are viz:

"First, the lessor was given the option, in such event, to terminate the lease. Under that provision, expressly, the lease could not be terminated without notice of exercise of the option to so terminate the same. Also, if the provision for termination of the lease had not stated that it was exercisable upon option, but had simply stated that the lease would be terminated on a 30 day rent default, the law is clear that the lease could not be terminated without notice being given prior to a subsequent offer to pay the defaulted rent. However, the second provision was that in the event of a default in rent continued for 30 days, that the 'lessee covenants and agrees that in case of such default the entire rent for the term which said premises are leased shall at once become due and payable and may be recovered forthwith by distress or otherwise.'

"It is the opinion of this Court that this last mentioned provision means just what it says and that when the default occurred on September 15, 1945, and continued for a 30 day period thereafter, that at the end of such 30 days, by an express covenant of the lessees, the rent was due for the entire balance of the term (which is shown to be $24,840.00). That full rent did not become due as a forfeiture under the lease but as a covenant and agreement relating to the time for payment of rent. Accordingly the Master's ruling which was to the contrary on that feature is rejected." . . .

"On behalf of the lessees it was contended at the hearing that the questioned language of the lease should be construed to provide expressly or by implication that the full rent would fall due (in event of default) only at the option of the lessor. The language has been examined in light of that argument, but it seems to this Court that the paragraph quoted from page 2 of the lease is clear, and cannot be construed as so contended. The part relating to termination of the lease is expressly made on option, but the second portion is an outright covenant for payment of rent in advance from the time of such default with authority given to proceed forthwith to col-

lect. Likewise on reading paragraph 11 of the lease with the portion just referred to, it must be held that those two provisions read together do not spell out an option requirement in connection with the covenant to pay all of the rent in the event of a 30 day default.

"Paragraph 11, at the end of the lease, relates to termination at the pleasure or option of the lessor in the event of breach of any of the covenants or agreements made by the lessee.

"Thus, at the time this suit was filed the lessees (because of their 30 day default in September rent) were in the position of having covenanted that all of the rent for the balance of the term was due, and they had then submitted the delinquent September payment, which the lessor had rejected and returned to them together with a demand for payment of all of the rent for the balance of the term. In that situation, paragraph 11 of the lease was operative in that a failure on the part of lessee to comply with the covenant for payment of the rent for the balance of the term would be a breach of a covenant under the lease for which the lessor could, in turn, proceed for termination of the lease as provided for in paragraph 11.

"That, in effect, is what the lessor did. The lessor by written notice to the lessees demanded that the full rent be paid or that the premises be surrendered within three days. The subsequent filing by lessor after such three day period, of an action in the County Judge's Court for possession, shows that the three day notice and demand was given with that action in view the filing of this suit by the lessees having occurred during the three day period in question." . . .

"As the rent was due in amount of $24,850.00 when the three day written notice and demand was received by lessees on November 9, 1946, and was not paid, or tendered in this suit (filed during the three day period), nor even offered to be paid in the bill, the injunctive restriction imposed on the lessor's action for possession should not be continued or extended.

"It therefore appears that aside from possible procedural questions which might affect a ruling on a resumption of the interrupted law action for possession in the County Judge's

Court, the matters on which judgment of that court would depend and have been determined and settled in this case in favor of the lessor.

"The questions and controversies in this case, relating to the lease and the status of the parties thereto, are of a character leading to a final determination as to the present rights and possession between the parties to the lease. Having taken jurisdiction in such a cause, this court is entitled to proceed to grant full and complete relief, including an order determining the right to possession and direction, that possession be given by the one party to the other.

"Moreover, both parties to this suit have submitted for descision by this Court the matter of final decision as to present rights of possession. The plaintiff lessees in paragraph 1 of their prayer sought an injunction to restrain the lessor from seeking possession or the remedies under the lease in any court or cause other than in this suit. Defendant lessor in her cross-bill prayed, in effect, for an adjudication of and order for possession by this Court. For this court, having made ruling in this matter under which ruling the awarding of possession to the lessor is appropriate, to return the matter to the County Judge's Court, would be needless and an unnecessary additional burden on the parties and on that Court.

"WHEREUPON, IT IS HEREBY ORDERED, ADJUDGED and decreed, as follows:

"1. That the rights and status of the parties under the lease (as amended) involved in this suit are construed and determined as set out hereinabove.

"2. That the plaintiff's prayer that lessor be required to accept the delinquent quarterly rent as tendered, and praying that lessor be enjoined from terminating the lease, be, and the same hereby is denied.

"3. That the lease in question, as amended, is terminated and the lessees are remaining in possession of the premises without right thereunder.

"4. That the defendant lessor is entitled to possession of the premises covered by the lease, and the plaintiffs, lessees, are hereby ordered and directed to surrender the possession thereof to the defendant or her authorized agent, within five

days, from the date of this order, and failing therein application may be made by lessor to this court at the end of said five days for a warrant or writ of assistance for such possession."

From this final decree an appeal was perfected to this court, and, after the submission of briefs and arguments of counsel for the parties, this court, on April 4, 1946, entered an order of affirmance of the decree supra of the lower court. Counsel for appellants filed a petition for rehearing and a motion for clarification but each was denied and the mandate of this court issued to the lower court on April 30, 1947. On May 5, 1947, Honorable Charles A. Carroll, as Circuit Judge, entered an order making the mandate of the Supreme Court in this cause the decree and judgment of the Circuit Court of Dade County, Florida. An application thereafter for a writ of assistance to place Violet B. Spainhour, the petitioner, in possession of the property was made to Honorable Charles A. Carroll, Circuit Judge, but the Judge was advised by the respondent, Honorable Marshall C. Wiseheart, another Judge of said circuit, that he had assumed and had preempted jurisdiction of the cause and had entered an order staying the execution of the writ of assistance and permitted appellants in Case No. 1 supra to remain in possession of the property until the entry of a subsequent order of the court. The order of Judge Wiseheart aforesaid, it is contended by the petitioner, is in conflict with and in derogation of the final decree entered by Judge Carroll and subsequently affirmed by this court, and said order was and is in disobedience of the mandate of the Florida Supreme Court in said cause and a peremptory writ of mandamus of this court should issue against Judge Wiseheart precluding a further proceeding by him in the cause.

Under the local rules of court this cause was originally assigned to Judge Wiseheart who made certain interlocutory orders in the cause, the last of which was an order of reference to a master, and the cause for some unexplained reason thereafter proceeded to final decree before Judge Carroll, which decree was affirmed on appeal. Judge Carroll thereafter upon remand by this court issued a writ of assistance. At this stage a supplemental bill was filed and brought on for proceedings before Judge Wiseheart to whom the cause had been

originally assigned, and his action therein is now sought to be prohibited. Judge Wiseheart in his answer to the rule nisi regarding entertaining jurisdiction says that under the rules of that court for the disposition of its business the case had been assigned to him. We think, the rules notwithstanding, sound practice and orderly procedure dictate that Judge Carroll should have disposed of it. An observance of any other practice can and may likely result in confusion and unnecessary expense to litigants.

The answer or return of the respondent points out that since the rendition of the final decree on November 23, 1946, and the affirmance thereof on appeal by this court on April 4, 1946, and since the issuance of the mandate on April 30, 1947, supplemental matters have arisen which authorized the lower court, under the provisions of Section 63.27, Fla. Stats. 1941 (FSA), to allow the appellants to file an amendment to the bill of complaint and relitigate questions not considered or adjudicated or put at rest by the issues made and the decree entered in the original suit. It is alleged in the supplemental bill that the amendment dated December 7, 1937, to the original lease was not an issue nor adjudicated in the final decree dated November 23, 1946, and affirmed on appeal here.

Pertinent portions of the amendment supra are viz:

"1. The said lease is hereby amended so that in addition to all of the terms thereof the following shall be added:

"The party of the first part hereby gives unto the party of the second part an option to purchase the demised premises at a price of Twenty-Five Thousand ($25,000.00), subject, however, to the following conditions:

"(a) The option to purchase must be exercised no sooner than ten (10) years from the date of the original lease between the parties hereto, covering the demised premises, and no later than the date on which the term of the original lease between the parties hereto ceases;

"(b) None of the sums of money now being paid by the party of the second part unto the party of the first part as rents under the lease covering the demised premises shall be set off against the purchase price of Twenty-five Thousand ($25,000.00) Dollars;

"(c) If, for any reason, the original lease covering the demised premises between the parties hereto shall be deemed forfeited or shall fall for any reason, the option herewith granted shall be deemed to have been forfeited and likewise to have fallen;

"(d) If, for any reason, the rent payment on the original lease between the parties hereto covering the demised premises shall be in default for a period of Ten (10) days, the option to purchase herewith granted shall be deemed forfeited, provided, however, the party of the first part shall have first communicated written notice to the party of the second part of the failure, for the space of ten (10) days, to have made the rent payment, and after two (2) days thereafter have been allowed to elapse during which time the party of the second part shall be allowed to cure the default in the nonpayment of rent.

"IT IS UNDERSTOOD AND AGREED by and between the parties hereto that in each and every respect, the terms of the original lease hereinabove described shall remain unchanged, and the same are hereby ratified, approved and confirmed by the parties hereto."

The prayer of the amended bill of complaint allowed to be filed by the respondent, Judge Wiseheart, under date of May 19, 1947, is that the court take jurisdiction of the supplemental matters set out therein and on final hearing (1) determine that the option to purchase supra was properly exercised by the plaintiffs; and (2) the defendant (Spainhour) be required to execute and deliver to the plaintiffs a warranty deed to the described premises; (3) or in the alternative, that the defendant be required to accept the deferred rent in such an amount as may be found due after an accounting; (4) that the court decree that the plaintiffs pay the amount of the rents into the registry of the court under the terms of a court order. The respondent denies that his order of May 19, 1947, conflicts with and is in derogation of the final decree of November 23, 1946, or is in disobedience to the mandate of the Supreme Court of Florida, but contends that it is clearly authorized by Section 63.27, supra. Petitioner filed in the cause a motion for a peremptory writ of

mandamus against the Honorable Marshall C. Wiseheart, as Judge, notwithstanding the return or answer of the respondent.

The question presented here for consideration is whether or not the option to purchase, dated December 7, 1937, and identified in the original bill of complaint as Exhibit "B" set out in part supra, was an issue presented by the pleadings, duly considered and decided by the court below in the final decree of November 23, 1946, and affirmed by this court on appeal. If the option to purchase was not an issue and not decided by the final decree, then the respondent's answer or return to the alternative writ must be sustained and the cause dismissed. Conversely, if the option to purchase was adjudicated and put at rest by the final decree and affirmed here, then a peremptory writ as a matter of law must issue from this court against the respondent. For an appropriate answer to these questions the original record must be examined.

1. Paragraph II of the original bill of complaint in part, sets out in extenso the amendment agreement of December 7, 1937, and appellants' construction or interpretation placed thereon, and especially sub-paragraph (d). Paragraph III makes certain allegations as to the amendment agreement dated December 7, 1937. Paragraph IV again makes certain allegations as to the option to purchase agreement dated December 7, 1937. The third prayer of the bill of complaint is, "that this Court in its final decree shall construe and enter a declaratory judgment as to the rights of the plaintiffs herein and to the option to purchase, and shall in said judgment determine that the option to purchase is a valid and outstanding contractual right of the plaintiffs herein and not subject to cancellation or rescission at the mere whim and caprice of the defendant, Violet B. Spainhour."

2. Grounds 3 and 4 of the motion of Violet B. Spainhour to dismiss the original bill of complaint were to the effect, first, that the agreement of December 7, 1937, simply granted the lessees an option to purchase the property for the sum of $25,000 and the amendment did not change the default period for the payment of rents; the ten days' period referred in sub-paragraph (d) supra of the amendment was limited

to the right of the lessees to purchase the property at a time when the rent was ten days in arrears.

3. The answer of Violet B. Spainhour to that portion of the bill of complaint seeking a construction by the court of the amendment of December 7, 1937, at pages 41, 42, 43, and 44 of the transcript represented that the ten days' provision referred to the right to purchase the property but did not in any manner affect the payment of rents which was governed exclusively by the several terms of the original lease dated November 27, 1936, and particularly paragraphs 1, 2 and 11.

4. The court in its final decree considered the contention of counsel for the respective parties, as reflected by the opinion filed and the languages employed in the order of judgment viz: "that the lease in question, as amended, is terminated and the lessees are remaining in possession of. the premises without right thereunder. That the lessor is entitled to possession of the premises covered by the lease, and the plaintiff's lessees are hereby ordered and directed to surrender the possession thereof to the defendant. . . ."

5. Question No. 2 of brief of counsel for appellants in Case No. 1 is viz: Where an original lease provided for a default in the provision for the non-payment of rent after a 30-day default and where an amendment to the lease grants an option to purchase a property and provides that default be effective so as to bar the option unless it was then in existence for ten days and then continue after a two-day written notice, can the landlord, without giving any such notice, cancel the option eight days after she has received all defaulted rent and before she has made any election or given any notice?

6. The decree of November 23, 1946, was reviewed here on appeal. The several contentions of counsel made in the course of oral argument, coupled with a more elaborate presentation thereof by exhaustive briefs, were severally brought to the attention of the court. We have given studious consideration to the entire record certified here and reached the conclusion that the appellants failed to establish reversible error on the appeal and therefore the decree of the court below was affirmed and our mandate issued accordingly. It

is our view and holding that the issues presented by the supplemental bill of complaint, filed after the going down of our mandate, by the respondent were fully adjudicated and placed at rest by the final decree of November 23, 1946, and on appeal affirmed by this court.

It is established law that mandamus is available to require the cancellation and expunging from the record of an order, decree or judgment which has been entered without authority of law or without jurisdiction for the entry of such order, decree or judgment. State ex rel. Weathers v. Davis, 143 Fla. 250, 196 So. 487; State ex rel. Payson v. Chillingworth, 122 Fla. 339, 165 So. 264. The motion for a peremptory writ of mandamus, notwithstanding the answer or return of the respondent, is hereby granted and said writ shall issue as prayed.

It is so ordered.

THOMAS, C. J., TERRELL, J., and PARKS, Associate Justice, concur.