THE STATE OF FLORIDA *ex rel.*, R. HUDSON BURR, NEWTON A. BLITCH AND ROYAL C. DUNN, AS RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Relators*, v. ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, *Respondent.*

Opinion filed February 5, 1916.

1. Where an order of the Railroad Commissioners requires the construction of a depot of stated dimensions at a stated

place in a municipality, the structure to be of wood, and an ordinance of the municipality forbids the erection of other than brick, stone or other fire proof material, which ordinance is brought to the attention of the Railroad Commissioners as a reason for not complying with the order, such order will not be enforced by mandamus, where the effect of the ordinance on the order has not been considered by the Commissioners in determining the reasonableness of the order.

2. While the duty of furnishing reasonably adequate depot facilities may be enforced, the nature and extent of facilities required to be furnished should be determined after a due consideration of all pertinent facts including the expense to the carrier and the relative benefits to the public to be served.

Original proceedings in mandamus.

Motion denied.

*D. C. McMullen* and *T. S. Trantham,* for Relators;

*W. E. Kay,* for Respondent.

PER CURIAM.—The alternative writ issued herein commands the respondent "to provide and erect at St. Cloud, Florida, a fright depot and passenger depot in accordance with the plan approved by the Railroad Commissioners of the State of Florida, bearing the legend 'Sketch D. Atlantic Coast Line R. R. Sketch of proposed Depot Facilities, St. Cloud, Fla.,' and according to the dimensions and specifications set forth in said plans," or to show cause for not doing so. The order of the Railroad Commissioners is as follows:

"That the Atlantic Coast Line Railroad Company be and it is hereby required to provide and erect at St.

Cloud aforesaid a freight depot, which may be done by moving the existing combination freight and passenger depot to the east of its present location and remodeling the same so that it shall contain a freight ware room with not less than 1,656 square feet of floor space and a covered shed on the end of the said building with not less than 612 square feet of floor space, and a platform adjacent to and along the side of the ware room to contain 760 square feet of floor space; that a passenger depot be erected on the site of the present combination freight and passenger depot, which said passenger depot shall contain a waiting room for white passengers with not less than 700 square feet of floor space, and adjoining thereto a ladies' rest room of dimensions 6 feet 6 inches by 10 feet, and a ladies' toilet room, to be entered from the rest room, of dimensions 4 feet 6 inches by 10 feet.   Also a men's smoking room of dimensions 6 feet 6 inches by 10 feet and a men's toilet room, to be entered from the smoking room, of dimensions 4 feet 6 inches by 10 feet.   Also a waiting room for colored passengers with not less than 418 square feet of floor space and adjoining thereto a toilet room for women of dimensions 4 feet 6 inches by 10 feet and a toilet room for men of dimensions 4 feet 6 inches by 10 feet.   Also a ticket window for both white and colored passengers as provided by law.   That a suitable and sufficient room for the proper handling, storage and care of baggage be provided.   That between the depot offices and the freight ware room there shall be an open passage way under the main roof of the building 16 feet in width. That the said depot shall be provided with suitable walkways and approaches, and that the said waiting rooms and other facilities provided for passengers shall be ade-

quately lighted, as well as all approaches thereto. That ground plans of the above described depot be submitted to the Commissioners for their inspection and approval within thirty days after the date of this order, and that the aforesaid depot and facilities be completed, and this order fully complied with, on or before the 1st day of November, A. D. 1915."

The writ alleges that "the said Atlantic Coast Line Railroad Company submitted to the said Commissioners a proposed plan for the said station buildings, bearing the legend 'Sketch 'D' Atlantic Coast Line Railroad. Sketch of Proposed Depot Facilities, St. Cloud, Fla.,' which said plan was approved by the said Commissioners."

In the answer of the respondent to the alternative writ it is averred that respondent "undertook to comply with said Order No. 481, and to that end submitted to relators in due time a plan of the proposed station facilities at St. Cloud, and at the same time fully explained to them the construction thereof, then and there stating to them that the structures were to be of wooden material, and also at the same time furnished relators with estimates of the cost thereof, which said estimates and figurs necessarily contemplated that said structures were to be of wooden material; which said plans for the proposed depot facilities, as thus explained to relators by respondent as aforesaid, was duly approved by relators as satisfactory and as a proper plan for the construction of the depot facilities at St. Cloud under said order. That having ample time to carry out the requirements thereof by remodeling and constructing the structure and facilities contemplated thereby, according to the plan, and of the material theretofore explained to and ap-

proved by relators as aforesaid, respondent undertook to proceed to comply with said order, but respondent says that it was prevented from complying therewith and constructing said facilities according to the plan approved by relators as aforesaid without any fault or omission on respondent's part, but solely for the reason that at the time said plan was approved, authorizing said structure to be constructed of wooden material as aforesaid and thence hitherto, there were in force certain Ordinances of the City of St. Cloud, which established what are commonly known as fire limits in said city, by prohibiting the erection of any wooden building within a certain area therein, which included the site of respondent's depots and of the proposed depot facilities, and required all buildings and repairs of existing buildings within such area to be constructed and made of brick, stone, or other fire-proof material; and respondent further avers that when it undertook to proceed with the erection of said depot, according to the plans, specifications and estimates approved by relators, which contemplated the use of wooden material therein, as aforesaid, the municipal authorities of St. Cloud informed respondent that they did not like or approve the proposed station facilities and would not permit the same to be erected, and, acting pursuant to said ordinances aforesaid, refused to issue a building permit to respondent therefor, insisting that the construction of said facilities should be of brick or stone, and threatened respondent that, if it undertook to proceed with the construction of said facilities out of wooden material, they would prosecute the contractors, agents or employees of respondent engaged in any such effort, all of which was duly reported to relators. That the reason why the remodeling and construction of facilities

at St. Cloud, Florida, has not been made by this respondent, as per the terms of Order No. 481, is because of the aforesaid interference by the municipal authorities of St. Cloud therewith. That to build entirely out of brick or stone a new freight station where the Florida Railroad Commissioners have ordered the *remodeling and removal* of the present station for freight uses, as shown by Order No. 481 (which remodeling must nec-essarily be of wood, and the contemplated use of wooden material was known to and approved by the relators) which would involve the entire destruction of the values of the present building and a new outlay of at least $2,500.00 unnecessarily of its funds, in the construction of such freight depot of brick, stone or material other than wood. That the extent that brick or stone would have to be used in lieu of wood in the building of the separate passenger station, and which respondent avers would mean an additional outlay, wholly unnecessary, of at least $2,000.00, thereby forcing this respondent to unnecessarily expend said large sums of money and taking its property without due process of law, contrary to Section 12 of the Bill of Rights of the Constitution of the State of Florida, and the Fourteenth Amendment to the Federal Constitution."

The relators move to quash the answer and for a peremptory writ on the following grounds:

"1.   Said answer sets forth no defense to the alternative writ.

"2.   Because the inclusion of the site of the proposed depot facilities within the fire limits of the town of St. Cloud is no legal reason why the order for the provision of such facilities made by the relators should not be complied with by the respondent.

"3.    Because the answer virtually admits the right of the relators to the relief sought."

It is apparent from the order sought to be enforced and the allegations of the alternative writ and the answer that the order made by the Railroad Commissioners contemplates a wooden structure.   From the averments of the answer admitted by the motion to quash for the purposes of the motion (State ex rel. v. Wolfe, 63 Fla. 290, 296), it appears that if the order as made be complied with it will violate a municipal ordinance of St. Cloud forbidding the erection of a wooden building within an area including the point where the depot is required to be erected.   The validity of the municipal ordinance cannot be determined in this proceeding to which the municipality is not a party; but as it is apparent that the reasonableness of the order of the Railroad Commissioners here sought to be enforced is directly affected by the municipal ordinance, a governmental regulation, requiring buildings in the area including the depot site to be "made of brick, stone, or other fire proof material," such ordinance should have been considered by the Commissioners when the existence of the ordinance was called to their attention as alleged in the answer; for if by virtue of the ordinance the order is unreasonable either because it requires the violation of a municipal ordinance or because under the ordinance a much more expensive depot than that contemplated by the order is required to be built, the order should not be enforced by mandamus. While the duty of furnishing reasonably adequate depot facilities may be enforced, the nature and extent of facilities required to be furnished should be determined after a due consideration of all pertinent facts including the expense to the carrier and the relative benefits to the

public to be served. On the subject of whether in view of the ordinance, the order is unreasonable, the respondent is entitled to an opportunity to be heard, before the matter is ultimately determined by the Commissioners.

The motion to quash the answer and, for a peremptory writ of mandamus is denied.

All concur, except COCKRELL, J., absent by reason of sickness.